**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COLT RUSSELL LAMOUREUX,** | : | **Civil No.  1:20-CV-665** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has underscored for us the limited scope of our review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Colt Lamoureux, a younger worker who was in his 20s at the time of the alleged onset of his disability, applied for disability benefits under Title II of the Social Security Act on January 2, 2019, alleging that he had been disabled since February 26, 2013, due to back and hip injuries, obesity and mental impairments. (Tr. 15-17). After a consideration of the medical records and opinion evidence, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Lamoureux could perform a range of sedentary work with limitations and denied this disability application. (Tr. 12-28).

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.     **Statement of Facts and of the Case**

Colt Lamoureux applied for disability income benefits under Title II of the Social Security Act on January 2, 2019, alleging that he had been disabled since February of 2013, due to back and hip injuries, obesity, and mental impairments. (Tr. 15-17). Lamoureux was born in November of 1985, and was thus in his late 20s at the time of the alleged onset of his disability, making him a younger worker under

the Commissioner's regulations. (Tr. 26). Lamoureux had previously served in the military, in the Army Airborne, and had suffered back and joint injuries as a result of a parachute jump while in the service. (Tr. 22). The date of the alleged onset of his disability for Social Security purposes coincided with his discharge from the military and it was reported that Lamoureux had not worked since his discharge. (Tr. 22).

The administrative record in this case confirmed that Lamoureux had experienced a significant service-related back injury, but also contained references to his ability to perform some sedentary work. Thus, a March 13, 2019, functional capacity evaluation of Lamoureux conducted by ErgoScience concluded that Lamoureux could perform some work in the sedentary range. (Tr. 386-395).[1] Likewise, treatment notes from the VA observed that Lamoureux could "perform sedentary activity if he can use the speaker phone to communicate and can perform limited time on computer and/or reading." (Tr. 587). For his part, Lamoureux has reported that, while his chronic back injuries and pain have severely reduced his level of activity, he is still able to do some farming, yard work and household tasks. (Tr. 39-44, 177-184, 470). Lamoureux also reported that he can drive, walk short

---

[1] While limiting Lamoureux to sedentary work, this report suggested that the plaintiff could not sustain this level of work during an 8 hour per day, 40-hour work week. The ALJ rejected that aspect of the ErgoScience report's conclusions as inconsistent with Lamoureux's activities of daily living, (Tr. 25), and Lamoureux has not specifically challenged this finding on appeal.

distances, go out daily, shop, manage his finances, and occasionally hunt and fish, albeit with back discomfort. (Id.)

It is against this backdrop that a hearing was held on this disability application on October 4, 2019, where Lamoureux appeared and testified along with a Vocational Expert. (Tr. 32-68). In the course of the Vocational Expert's testimony, in response to hypothetical questions posed by the ALJ, the expert identified three sedentary jobs that Lamoureux could perform—table worker, bond semiconductor and security systems monitor. (Tr. 27, 62). The Vocational Expert further testified that there were approximately 36,000 positions available in the national economy in these three fields. (Id.)

Following this hearing, on November 15, 2019, the ALJ issued a decision denying this application for benefits, finding that Lamoureux remained capable of performing a limited range of sedentary jobs in the national economy. (Tr. 12-28). In that decision, the ALJ first concluded that Lamoureux had not engaged in any substantial gainful activity since the date of the alleged onset of his disability. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Lamoureux's back and hip injuries, and related emotional disorders were severe impairments. (Id.) At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 18-21).

4

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Lamoureux's limitations from his impairments and found that he could perform a range of sedentary work with some restrictions. (Tr. 21-26). In making this RFC determination, the ALJ considered all of the medical and opinion evidence in this case, as well as Lamoureux's self-reported activities of daily living. (Id.) While largely crediting Lamoureux's assertions that he was unable to lead the very active lifestyle he enjoyed prior to his service-related injury, the ALJ noted that his activities of daily living and conservative medical treatment suggested that Lamoureux retained the ability to perform some sedentary work. (Id.)

Having arrived at this RFC assessment, the ALJ found at Step 4 that Lamoureux could not return to his past work, but concluded at Step 5 that there were a number of sedentary jobs in the national economy that he could perform. (Tr. 26-28). In particular, consistent with the Vocational Expert's testimony, the ALJ found that there were three sedentary jobs that Lamoureux could perform—table worker, bond semiconductor, and security systems monitor. The ALJ further determined that there were approximately 36,000 positions available in the national economy in these three fields. (Id.) Based upon these findings, the ALJ  held that there were a significant number of jobs in the national economy Lamoureux could perform, concluded that Lamoureux did not meet the stringent standard for disability set by the Social Security Act, and denied this disability claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Lamoureux contends the ALJ erred in concluding that the 36,000 jobs identified by the Vocational Expert were a significant number of jobs in the national economy justifying denial of this disability claim. Lamoureux also argues in a summary fashion that he was denied due process and equal protection of the laws through the ALJ's determination that significant jobs existed in the national economy that he could perform. Finally, Lamoureux asserts in general terms that the ALJ's decision was not supported by substantial evidence.

This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2014)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1),

416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that a  significant number of jobs exist in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

At step five of the sequential evaluation process, the adjudicator considers his or her assessment of the claimant's RFC, the claimant's age, the claimant's education, and the claimant's other work experience to determine whether the claimant can make an adjustment to work other than the claimant's past relevant work.  20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v).  If the ALJ finds that the claimant can adjust to other work, the claimant will be found not disabled.  Id. However, a claimant will not be denied disability benefits on the basis of the existence of isolated jobs that exist only in very limited numbers in relatively few

locations outside of the region where the claimant lives.  20 C.F.R. §§404.1566(b),

416.966(b).  Therefore, when making findings at step five, the adjudicator must also

consider whether the other work that the claimant can engage in exists in significant

numbers in the region where the claimant lives or in several other regions of the

country.  Id. On this score, "[w]ork exists in the national economy when there is a

significant number of jobs (in one or more occupations) having requirements which

[the claimant is] able to meet with [the claimant's] physical and mental abilities and

vocational qualifications."  20 C.F.R. §§404.1566(a), 416.966(a).

Generally, courts have not articulated some definitive arithmetic boundary

defining a "significant number" of jobs.  See, e.g., Hall v. Bowen, 837 F.2d 272, 275

(6th Cir. 1988) ("We are not blind, however, to the difficult task of enumerating

what constitutes a 'significant number' . . . . The decision should ultimately be left

to the trial judge's common sense in weighing the statutory language as applied to a

particular claimant's factual situation."); Trimar v. Sullivan, 966 F.2d 1326, 1330

(10th Cir. 1993) ("This Circuit has never drawn a bright line establishing the number

of jobs necessary to constitute a 'significant number' and reject the opportunity to

do so here."). However, case law has consistently concluded that a determination

that available jobs existed in numbers fewer than those found here satisfies this legal

requirement. For example, the Third Circuit found that a VE's testimony that there

were approximately 200 jobs within the claimant's capabilities in his region was a

"clear indication that there exists in the national economy other substantial gainful work which [the plaintiff] can perform." Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987); see also Ahmad v. Comm'r of Soc. Sec., 531 F.App'x 275, 278 (3d Cir. 2013) ("In light of our determination in Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987), that 200 jobs in the regional economy was a 'clear indication' that other meaningful work in the national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs as a surveillance system monitor was evidence of other work in significant numbers in the national economy."); Black v. Berryhill, No. 3:16-CV-1768, 2018 WL 4189661, at *12 (M.D. Pa. Apr. 13, 2018), report and recommendation adopted, No. 3:16-CV-1768, 2018 WL 4184303 (M.D. Pa. Aug. 31, 2018) (12,000 jobs); Onley v. Colvin, No. 1:13-CV-2833, 2015 WL 1513909, at *10 (M.D. Pa. Mar. 31, 2015) (700 jobs). While many of these cases involve an assessment of the number of jobs in the regional economy, the Third Circuit has also provided us with benchmarks regarding what constitutes a substantial number of jobs in the national economy, finding that: "the testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers." Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013) (citing Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (holding that vocational expert testimony that there were 10,000 jobs nationally was sufficient to show a significant number)).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C.   The ALJ's Decision in this Case Will Be Affirmed.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," Pierce, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek, 139 S. Ct. at 1154. Judged against these

14

deferential standards of review, we find that substantial evidence supported the ALJ's decision that Lamoureux was not entirely disabled.

On this score, Lamoureux's principal argument is his assertion that the ALJ erred in concluding that the 36,000 positions identified by the Vocational Expert as jobs in the national economy which Lamoureux could perform constituted a significant number of jobs that would defeat this disability claim. The difficulty with this argument is that the Third Circuit has rejected a similar argument in a more compelling factual setting, finding that: "the testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers." Young, 519 F. App'x at 772 (citing Johnson, 108 F.3d at 180 (holding that vocational expert testimony that there were 10,000 jobs nationally was sufficient to show a significant number)). This prior appellate court determination is fatal to Lamoureux's primary argument because if 20,000 available jobs is sufficient to satisfy this element of proof, then certainly the 36,000 available jobs found by the ALJ in this case provide substantial evidence to support the ALJ's decision that there were a significant number of jobs Lamoureux could perform.

Given the fact that the ALJ properly concluded that these 36,000 available jobs constituted a significant number of positions in the national economy,

Lamoureux's due process and equal protection claims also fail. In this setting, the requisites of due process are familiar ones:

> "[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). This standard is violated where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against the claimant. Ventura, 55 F.3d at 902–03 (claimant was denied a fair hearing where the ALJ acted abusive and intimidating, and interfered with the claimant's presentation of evidence supporting his claim); Hess v. Sec. of Health, Educ. and Welfare, 497 F.2d 837, 841 (3d Cir. 1974) (pro se claimant was deprived of a full and fair hearing where the ALJ failed to secure readily obtainable evidence to resolve doubts about his right to disability benefits).

Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 857–58 (3d Cir. 2007). Therefore, when a claimant like Mr. Lamoureux "was given an opportunity to appear at a full and fair hearing before an ALJ, was represented by counsel at that hearing, and was permitted to present evidence and legal arguments," due process is fully satisfied. Corbett v. Comm'r of Soc. Sec., 523 F. App'x 892, 895 (3d Cir. 2013). Here, the record reveals that Lamoureux received all of the process which was due to him. He was afforded a full and fair hearing where he was assisted by counsel. His claims and legal arguments were then carefully weighed and considered by the ALJ, but were ultimately found to be unpersuasive. This case, therefore, does not present a failure of due process. It simply entails a failure of proof and on these facts, Lamoureux's due process claim fails.

Nor has Lamoureux shown that these agency proceedings violated his right to equal protection. While this equal protection claim is largely undeveloped by the plaintiff, there is no indication that Lamoureux was the subject of invidious discrimination because he belonged to some suspect class. Instead, at most, Lamoureux seems to assert an argument in the nature of a "class-of-one" equal protection claim. With respect to such claims, it is well established that:

> Under the "class-of-one" theory, a plaintiff may advance an equal protection claim absent membership in a protected class by alleging irrational and intentional differential treatment when compared with similarly situated individuals. D'Altilio v. Dover Twp., No. 06–1931, 2008 WL 3925833, *3 (M.D.Pa. Aug. 21, 2008) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000)). To state an equal protection claim on a "class-of-one" theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006). As to first element, parties are only "similarly situated," if they are " 'alike in all relevant aspects.' " Perano, 423 Fed. Appx. at 238 (quoting Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008)).

Brace v. Cnty. of Luzerne, 873 F. Supp. 2d 616, 629–30 (M.D. Pa. 2012), aff'd, 535 F. App'x 155 (3d Cir. 2013).

In this case, Lamoureux's class-of-one equal protection claim fails because he has not identified any similarly situated persons who have been treated differently from himself. Moreover, the ALJ's decision in Lamoureux's case was a rational choice based upon the evidence presented by the plaintiff. Finding that this was a rational decision, and concluding that Lamoureux has not shown any irrationally

disparate treatment of other similarly-situated claimants, this equal protection argument fails.

Finally, we conclude that substantial evidence supported the ALJ's factual findings in this case. In this administrative context, "substantial evidence" is a term of art which means "more than a mere scintilla" and is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. In this case, the ALJ found that Lamoureux could perform a limited range of sedentary work. (Tr. 21-26). In making this determination, the ALJ considered all of the medical and opinion evidence in this case, as well as Lamoureux's self-reported activities of daily living. (Id.) While largely crediting Lamoureux's assertions that he was unable to lead the very active lifestyle he enjoyed prior to his service-related injury, the ALJ noted that his activities of daily living and conservative medical treatment suggested that Lamoureux retained the ability to perform some sedentary work. (Id.) This finding was supported by substantial evidence, including Lamoureux's self-described activities of daily living which indicated that he was able to do some farming, yard work and household tasks, could drive, walk short distances, go out daily, shop, manage his finances, and occasionally hunt and fish, albeit with back discomfort. (Tr. 39-44, 177-184, 470). Further, treatment notes from the VA observed that Lamoureux could "perform sedentary activity if he can use the speaker phone to communicate and can perform

limited time on computer and/or reading." (Tr. 587). Given the record evidence before the ALJ we find that a reasonable mind might accept this evidence as adequate to support the conclusion that Lamoureux could perform sedentary work. Biestek, 139 S. Ct. at 1154.   Therefore, this decision, which is supported by substantial evidence, may not be disturbed on appeal.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting de novo might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.    **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

March 9th, 2021